JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dr. Charlotte Brickstone

**(b)** County of Residence of First Listed Plaintiff   **Philadelphia**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Olugbenga O. Abiona, ABIONA LAW PLLC
121 South Broad St., Ste 1200, Phila., PA19107
215-833-8227

## DEFENDANTS

School District of Philadelphia, Sonya Berry and Dr. Malika Savoy Brooks

County of Residence of First Listed Defendant   **Philadelphia**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 220 Foreclosure | ☐ 441 Voting | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | **Habeas Corpus:** | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 463 Alien Detainee | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 510 Motions to Vacate Sentence | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 530 General | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | | ☐ 448 Education | ☐ 535 Death Penalty | | |
| ☐ 290 All Other Real Property | | | **Other:** | **IMMIGRATION** | |
| | | | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | |
| | | | ☐ 555 Prison Condition | | |
| | | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC, Section 2000e et seq. ADA

Brief description of cause:
Plaintiff was subjected to race motivated hostile work environment and retaliation; unauthorized disclosure of medical information

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
11/16/2022

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA _____

Address of Defendant: _____ 440 North Broad Street, Philadelphia, PA 19130 _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/16/2022 _____ *Must sign here* _____ 57026

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Olugbenga O. Abiona, Esquire _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 11/16/2022 _____ *Sign here if applicable* _____ 57026

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

--------------------------------

|  |  |
|---|---|
| DR. CHARLOTTE BRICKHOUSE | :     CIVIL ACTION No. |
|         Plaintiff, | : |
|    vs. | : |
|  | : |
| SCHOOL DISTRICT OF PHILADELPHIA | : |
| SONYA BERRY | : |
| DR. MALIKA SAVOY-BROOKS | : |
|        Defendants | : |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.    Plaintiff, Dr. Charlotte Brickhouse, in the above captioned matter, claims a sum in excess of One Hundred Thousand Dollars ($100,000.00) in damages and upon her causes of action, avers as follows:

2.    This action for monetary damages and other appropriate relief is brought by Plaintiff to redress violations by Defendants, School District of Philadelphia (hereinafter "School District"), Sonya Berry, (hereinafter "Berry") and Dr. Malika Savoy-Brooks, (hereinafter "Brooks") rights secured to Plaintiff by the laws of the United States of America and the Commonwealth of Pennsylvania.

3.    This action arises under the Civil Rights Act 42 U.S.C. 2000e et seq, (Title VII), and the Pennsylvania Human Relations Act, ("PHRA"), which prohibit race discrimination and retaliation because an employee engages in protected activities under the respective statutes and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful, and deliberate discrimination and retaliation by Defendants.

4.     This action also arises under the Americans with Disabilities Act (ADA) with prohibits, unauthorized disclosure of Plaintiff's private medical and health condition, in violation of Plaintiff's HIPAA rights.

## II.    JURISDICTION AND VENUE

5.     The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1331, which provide for the original jurisdiction of Plaintiff's claims arising under the laws of the United States of America.

6.     Plaintiff has exhausted her administrative remedies before bringing her Title VII, ADA, and PHRA claims to Court.  On September 30, 2022, the EEOC issued Plaintiff her right to sue letter.  See attached copy.   The venue of this Court is proper pursuant to the dictates of Title 28 U.S.C. §1391 (c).

## III.    PARTIES

7.     Plaintiff, Dr. Charlotte Brickhouse, is a citizen of the United States and the Commonwealth of Pennsylvania, who currently resides in Philadelphia, Pennsylvania.

8.     Defendant, School District of Philadelphia ("School District"), is an agency of the City of Philadelphia, with its offices located at 440 North Broad Street, Philadelphia, PA 19130.

9.     Defendant, Sonya Berry, is a citizen of the United States and currently resides within the Commonwealth of Pennsylvania, and at all times relevant to this action was Plaintiff's supervisor.  Defendant Berry was acting under color of state law.

10.    Defendant, Dr. Malika Savoy-Brooks, is a citizen of the United States and currently resides within the Commonwealth of Pennsylvania, and at all times relevant to this action, was Plaintiff's second level supervisor. Defendant Brooks was acting under color of state law.

## IV.    BRIEF STATEMENT OF FACTS

11.     Plaintiff is an African American by race.

12.    Plaintiff was hired by the School District in or about 2000 as a Teacher.

13.    In or about August 2016, Plaintiff was promoted to a Case Manager in the Office of Specialized Services.

14.    In 2017 Plaintiff was promoted to the position of Director and then Executive Director in or about August 2020. In her position as Executive Director, Plaintiff supervised Directors, Coordinators, a secretary, and other employees of the School District.

15.    When Plaintiff started working for the School District as Executive Director, she reported to ShaVon Savage, who left the position in or about May 2021.

16.    Thereafter, Defendant Berry was promoted to Acting Deputy Chief, and Plaintiff started reporting to Berry.

17.    Starting from on or about May 7, 2021, Plaintiff was subjected race discriminatory harassment and practices by Berry as compared to Plaintiff's Caucasian colleagues, Traci-Marie Moody (hereinafter "Mood"), and Heidi Hertzog (hereinafter Hertzog"), who also reported to and were supervised by Berry.

18.    Plaintiff was subjected to excessive monitoring, interfering with her supervisory responsibilities over Plaintiff's subordinates, false allegations of performance issues, antagonistic behavior, unauthorized disclosure of Plaintiff's private medical and health condition violating Plaintiff's HIPAA rights, and persistent harassment by Berry.

19.    On or about July 2, 2021, Plaintiff filed a formal internal complaint against Ms. Berry with the School District's Acting Deputy Chief Labor and Relations, Ronak Chokshi, (hereinafter "Chokshi") after making an oral complaint to him.

3

20.   Plaintiff complained to Chokshi about what she felt was a hostile work environment motivated by her race by Berry and Berry's HIPAA violation of unauthorized disclosure of Plaintiff's medical information to Plaintiff's colleague, Moody, who then shared Plaintiff's medical information with Debra Heaven, Amy Holdsworth, Adam Buck, that were not authorized to be informed about Plaintiff's medical information and condition. Plaintiff's medical information because the topic of discussion by these colleagues.

21.   Thereafter, Plaintiff was subjected to persistent retaliatory harassment and hostile work environment and retaliatory practices by Defendants Berry and Brooks, including but not limited to denial of vacation requests, and unwarranted performance improvement plan.

22.   On or about May 7, 2021, Plaintiff received an urgent email sent by Berry related to Extended School Year ("ESY", a large School District program that Plaintiff oversaw). The meeting was regarding an ordering that was never discussed with Plaintiff prior to the scheduled meeting.  Thereafter, the meeting was canceled w/o notice to Plaintiff.

23.   On May 7, 2021, Plaintiff sent Defendant Berry a text message about ESY ordering but received no response.

24.   On May 7, 2021, Berry demanded that Plaintiff's secretary, Linda Kolsky, (hereinafter "Kolsky") put in orders before the day was over although Plaintiff's secretary did not have authorization to do so, and there was no money in the budget. Plaintiff sent a message explaining the situation to Berry but received no response.

25.   On May 10, 2021, Plaintiff sent an email about mental health awareness to Berry but received no response.  On the same day Plaintiff sent an email to Berry for a one-on-one ("1:1") meeting but received no response.

26.   On May 19, 2021, Plaintiff scheduled a 1:1 with Berry by text message and email but

received no response.

27.    May 24, 2021, Plaintiff sent the requested information for ideal state of Special

Education (SPED) to Berry but received no response.

28.    On May 26, 2021, Plaintiff met with Berry for a meeting. Berry insisted that Plaintiff's

colleague, Hertzog, should stay in the room although, 1:1 meeting should only involve

two people, the supervisor and direct report.  Plaintiff had never been asked to stay in the

room with any of her colleagues when they had 1:1 meetings with Berry.

29.    During the meeting Berry discussed ESY start time only.  Later that day Berry sent

Plaintiff an email past work hours requesting that Plaintiff should provide her with

updates on five major items in two days.

30.    On May 26, 2021, Plaintiff sent the requested information to Berry, but never received a

response email from Berry.

31.    On May 26, 2021, Plaintiff sent an email to Berry for requested information of equipment

pick up and drop off during ESY but received no response from Berry.

32.    On May 26, 2021, Plaintiff sent an email to Berry requesting a new ESY start time.

Plaintiff expressed her concern about the congestion that could cause delays in getting

students in and out of the buildings and also cause a possible safety risk to students with

disabilities but received no response from Berry.

33.    On June 1, 2021, Plaintiff sent an email to Berry with requested recovery services

document but received no response to her request.

34.    On June 8, 2021, Berry asked Plaintiff to complete an ESY plan after Plaintiff told Berry

she already developed a plan, and when Plaintiff asked Berry in an email for clarity and

direction, Berry failed to respond.

35.   Berry sent Plaintiff a document that had Plaintiff's name as a creator, but Plaintiff had never seen that document before that day.

36.   On June 9, 2021, Plaintiff talked to her colleague, Moody, about teacher allotment shortage for ESY, (Moody had received this information on June 1, 2021, from Berry) however, Berry never had a conversation with Plaintiff about this issue. The information regarding the teacher shortage was not given to Plaintiff by Moody until approximately one and half weeks after Moody received it.   Berry never gave Plaintiff this information.

37.   On June 16, 2021, Plaintiff sent an email regarding the contingency plan for ESY materials as requested by Berry but received no response from Berry.

38.   On June 17, 2021, Berry called a mandatory meeting to discuss ESY planning. During this meeting, Berry was very nasty, disrespectful, condescending to Plaintiff and shot down all of Plaintiff's answers and ideas in front of Plaintiff's colleagues and direct reports, Nancy Velez, Linda, Russell Washington, Laquenta Montanez, Jennifer Chapman, Lisa Werts, Moody and Hertzog.  Sam Rein from IT (another School District employee) called Plaintiff to ask how Plaintiff was doing after this meeting, stating "I just heard you had a rough meeting let me know what I can do to support you".  Mr. Rein was not present at the meeting. He heard about it from Nancy Velez who was present.

39.   On June 19, 2021, Berry sent Plaintiff an email on a Saturday to check email for a new ESY assignments that were changed although Berry had no discussion with Plaintiff about it.

40.   On June 21, 2021, Berry called another mandatory ESY meeting and questioned Plaintiff and Plaintiff's team about an alternative plan because they could not use the approved online adaptive programs, they used during the school year because it was not approved

by the Board.  Berry never discussed nor asked Plaintiff any questions about the plan prior to this meeting.  However, Berry's attitude towards Plaintiff during this meeting was very nasty and condescending in front of Plaintiff's direct reports and colleagues, Renay Boyce, Russell Washington, Jennifer Chapman, Alan Arallo, Lisa Werts, Nancy Velez, Linda, Moody, Kim Harris and Hertzog.

41.   Berry never subjected Plaintiff's comparators, Moody and Hertzog to these harassment, hostility, antagonistic, condescending, caustic, and toxic work environment that she subjected Plaintiff to.

42.   On June 21, 2021, Plaintiff followed up on a question asked in the mandatory ESY meeting about recovery services teachers. Specifically, Plaintiff asked Berry who would contact the teachers and staff to inform them of their school assignments.  Berry responded late in the evening and told Plaintiff that Plaintiff had to contact them one week before they started.

43.   On June 22, 2021, Plaintiff sent the draft email to Berry for approval. At 7:09 p.m., Berry responded to Plaintiff's email to send the draft to the recovery teachers.  Plaintiff had to stay up until after midnight (12:00 am) sending the emails.

44.   On June 23, 2021, Berry sent Plaintiff an email well after work hours (6:27 pm) instructing Plaintiff to report to the School District Headquarters after Plaintiff was told to report to another school that week and to give her an outline of three days of instruction for ESY. The project/task was due by 8:45 a.m. (15mins after Plaintiff's workday begins).

45.   On June 24, 2021, and June 25, 2021, Plaintiff called out sick. Berry then asked on both days that Plaintiff should provide her a list of recovery teachers after Plaintiff called out.

7

Yet, on June 23, 2021, Plaintiff emailed the recovery students list and transportation list to Berry, but she never responded.

46.   Plaintiff was out for two weeks between June 25, 2021, and July 9, 2021, due to illness and one week for a scheduled vacation, from July 12 to 16, 2021.

47.   On June 28, 2021, Plaintiff was informed by one of her direct reports, Debra Heaven (Director) that Moody called her at approximately 6:30 a.m. that day asking her to report to another school. During that conversation Plaintiff was told that Moody accused Plaintiff of calling out sick on purpose. Moody also stated that she and Berry did not believe that Plaintiff was really sick and caused a great deal of confusion as a result.

48.   Plaintiff's comparators were never subjected to this type of hostile work environment and disclosure of their private medical information to unauthorized persons by Berry.

49.   On July 7, 2021, Plaintiff filed a formal complaint with the School District's Office of Labor and Relations Deputy Ronak Chokshi, (hereinafter "Chokshi") of discrimination and unauthorized disclosure of her medical information without her express consent by Berry to Moody, and that Moody shared Plaintiff's medical information with her direct reports, Amy Holdsworth, Jodi Roseman, Tanya Bradley-Watson, and Nefertiti White.

50.   On July 9, 2021, Plaintiff withdrew the formal complaint because she did not want to get her direct report, Debra Heaven, involved in her complaint and to protect her from retaliation.

51.   On July 22, 2021, one of Plaintiff's direct reports was called out of a scheduled meeting to an impromptu meeting with Berry and Brooks, without Plaintiff's prior knowledge.

52.   On July 27, 2021, Plaintiff sent an email to Berry about DHS utilization report and asked directly for support and guidance because Plaintiff never saw the report before and did

not know how to respond to the corrective action but received no response from Berry.

53.     On July 27, 2021, ESY staff support assignments for the week of August 2, 2021, were sent without Plaintiff's knowledge or input.

54.     On July 28, 2021, Plaintiff sent an email to Berry about a missing meeting link for her 1:1 meeting with Berry but did not receive any response.

55.     On July 29, 2021, Plaintiff circled back about the last day of ESY asking specifically how they would capture the attendance of all teachers and pay teachers who worked an additional day for recovery services. Berry told Plaintiff she would give Plaintiff a call, but never called Plaintiff back. However, on the same day, Berry called Plaintiff's direct report, Russell Washington, to discuss ESY materials and other matters (SPED framework) but did not share any of this information with Plaintiff.

56.     On August 2, 2021, Plaintiff requested a 1:1 meeting invite from Berry stating again that she did not have the link. Plaintiff shared with Berry several times that there was no link attached to the invite, but no link was ever sent to Plaintiff.

57.     On August 2, 2021, Plaintiff sent an email to Berry about vacation request reconsideration for Clarinda Dourdis (Speech and Language Therapist on Plaintiff's team) who was not aware of the blackout vacation days but received no response.

58.     On August 4, 2021, Plaintiff sent an email to Berry about their 1:1 meeting. Berry asked if Plaintiff could meet her at Fels High School the next day. Plaintiff texted her the next day about their meeting, but Berry did not respond.

59.     On August 4, 2021, Berry sent Plaintiff an email at 10:30 p.m. to cover at a school in the next morning.  Plaintiff discussed with Berry the lack of communication between the two of them. Plaintiff explained to Berry that Berry's lack of communication is making it

difficult for Plaintiff to properly perform her job. Plaintiff also told Berry that they never met after Plaintiff's return to work on July 19, 2021, to discuss the things that Plaintiff missed or need to catch up on from the previous weeks Plaintiff was out. Berry stated that she was not meeting and sharing information with anyone else, and she would schedule a meeting for them to catch up the next day. But this was false because Plaintiff knew Berry was meeting with and sharing information with Plaintiff's colleagues and direct reports.

60.  On August 5, 2021, Plaintiff sent Berry a text to ask if they were meeting at Fels HS as she promised when Plaintiff spoke to her the day before about her lack of communication.  Berry did not respond, and they never met.

61.  On August 5, 2021, Berry called Plaintiff's direct report, Washington, over to speak with her as Washington was walking with Plaintiff.  Berry shared with him that Plaintiff's team should be working in the field four days a week, without any prior discussion with Plaintiff.   Berry persistently undermined Plaintiff's supervision of Plaintiff's subordinates and direct reports, humiliating and ignoring Plaintiff before her subordinates.

62.  On August 6, 2021, Berry spoke with Plaintiff's direct report, Washington, to discuss changing the SPED framework without having any discussion with Plaintiff about it.

63.  On August 6, 2021, Berry asked Plaintiff to develop a PowerPoint to review and discuss the possibility of longer Special Education Compliance Monitor (SPECM) meetings. Plaintiff responded that she would have it done by the following Friday. But on Wednesday August 11, 2021, Berry told Plaintiff that she was using a PowerPoint that Abena Osei, (Moody's direct report) developed and that she would share it with Brooks

and Brooks' colleagues. Yet, Plaintiff had been working on this PowerPoint that was due in two days.

64.     On August 11, 2021, Plaintiff sent Berry her vacation request, but received no response.

65.     On August 11, 2021, Plaintiff walked to Berry's office for their 1:1 that was scheduled for 12:01p.m. But Berry's office door was closed and Plaintiff couldn't get in. Plaintiff went back to Berry's office at 12:46 p.m., knocked and entered to ask about their 1:1.

66.     On August 23, 2021, Berry sent Plaintiff an email and asked Plaintiff to cancel Plaintiff's scheduled ESY meetings until they talked with no explanation.

67.     On August 23, 2021, Plaintiff overheard about a meeting regarding project managers and action items.  Plaintiff's responsibilities included overseeing several Project Managers: four on her team. But Plaintiff was not informed about this meeting and was not invited to the meeting.

68.     On August 23, 2021, Plaintiff's vacation request was denied for August 1, 2022. Yet, Berry's vacation for the same time frame was approved.

69.     On August 23, 2021, Plaintiff's request for a cubicle change for a member of her team was denied without explanation by Berry.

70.     On August 27, 2021, a leadership meeting was canceled despite Plaintiff showing up on time. Berry said they would start shortly, but as of 11:22 a.m. there was no meeting and no communication from her to Plaintiff.  Approximately 11:55 a.m., Berry called Plaintiff's direct report, Washington, out of Plaintiff's office to discuss instructional support for SPED students in Philadelphia Virtua Academy (PVA). He was asked specifically for asynchronous interventions and parent and teacher training for students who are registered for PVA. But. Berry said nothing to Plaintiff about this matter.  At

approximately 12:10 pm Plaintiff walked into the meeting in Berry's office about PVA.
Berry told Plaintiff they were not supporting PVA in any way. Plaintiff asked again and
Berry reiterated, "we are not supporting at all with anything".

71.     On August 30, 2021, Plaintiff contacted Chokshi and reinstated her formal complaint of
        race motivated hostile work environment and discrimination against Ms. Berry.

72.     On August 31, 2021, at about 8:38 a.m. Plaintiff read an email sent over the weekend
        informing Plaintiff that her team had to report to 440 North Broad Street (School District
        Administrative Office) that week. Plaintiff sent an email explaining that she just read the
        email and her team is scheduled to support school teams for school opening. Berry
        informed Plaintiff that Plaintiff's team should report to 440 North Broad Street. Plaintiff
        sent an email asking for clarity of support and responsibilities. Plaintiff also asked if
        Berry could reach out to Karen Kolsky (Chief in School Support Office) to inform her
        that the team will not be supporting schools, but Berry did not respond.

73.     On August 31, 2021, at 3:10 p.m. it was brought to Plaintiff's attention that an order was
        rejected for the Geer Grant that was discussed with Berry previously on several
        occasions.

74.     On August 31, 2021, Plaintiff was called into a meeting to discuss a (Professional
        Development (PD) and a training. The conversation ensued due to new slides being
        added to the PD slide deck at 11/2 hours before a meeting.  Although it was agreed upon
        that Moody and Plaintiff would work from a copy, Berry made the changes in another
        link on a different document. But Plaintiff was not aware of these changes until they had
        a conversation at 11:39 a.m. that Plaintiff's information was in the wrong document.
        After becoming aware of this Plaintiff asked Berry if they could reschedule the training

because they were not prepared, but Berry responded, "No, absolutely not". At that meeting Berry informed them that information in a PowerPoint must come to her and Hertzog for approval three days in advance. This was never shared with Plaintiff previously by Berry.

75.     At about 10:50 a.m. on August 31, 2021, Berry asked her secretary and Plaintiff's secretary about Plaintiff's direct report, Michelle Nutini, reporting back to work in person. She inquired directly where Ms. Nutini had been working. After hearing about this, Plaintiff went into Berry's office and told her that Berry could have asked Plaintiff directly where Plaintiff's direct report was. Plaintiff told Berry that she knew where Nutini was working and where she had been. Plaintiff told Berry that Berry could come directly to Plaintiff if she wanted to know anything about Plaintiff's team.

76.     On August 31, 2021, Plaintiff was informed by her direct report, Zaneah James, that she was called into a meeting on August 13, 2021 @ 2:30 p.m. with Berry and another director A. Osei, regarding work that hasn't been completed. Ms. James responded in an email but was still called into a meeting without Plaintiff's knowledge.

77.     On or about September 8, 2021, Plaintiff met with Chokshi regarding Plaintiff's complaints. Plaintiff told him about a leadership plan she was given at a meeting Plaintiff had with Berry and Brooks. Plaintiff explained to Chokshi that allegations and statements in the "plan" were inaccurate. Chokshi looked over the document and told Plaintiff that the document looked like a Performance Improvement Plan ("PIP"). Plaintiff asked him how they could claim absences were a problem when Plaintiff only took off for two weeks sick leave (which was later FMLA approved) and one week vacation. Plaintiff was placed on a race discriminatory and retaliatory PIP by Defendants.

78.    On September 9, 2021, Berry sent an email to Plaintiff's secretary to cancel ESY meetings after they had discussed Berry's expectations in a previous meeting. Plaintiff sent an email to Berry explaining this to her again.  Berry responded that Plaintiff would only be responsible for instruction during the planning phase of ESY. Plaintiff responded and explained that this was not made clear to her in their last meeting.

79.    On September 15, 2021, an email was sent from Brooks titled Leadership expectations for a meeting, while Plaintiff was on vacation. Plaintiff had no idea what the meeting was about.

80.    On September 21, 2021, Plaintiff met with Berry and Brooks regarding leadership expectations. Plaintiff was completely shocked when she was told for the first time at this meeting that Plaintiff was not meeting her work expectations and would be required to develop a professional leadership plan. This was a continuation of the racially motivated hostile work environment and retaliation by Defendants for Plaintiff engaging in protected activities under the statutes.

81.    On September 29, 2021, Plaintiff's request to attend the Council for Exceptional Children (CEC) conference was denied by Brooks.

82.    Defendants were having communications with Plaintiff's subordinates about Plaintiff and interfering with Plaintiff's supervision of her direct reports.

83.    On October 7, 2021, Plaintiff sent an email to Chokshi and complained that she was still being subjected to harassment and a hostile work environment, but Chokshi did not respond.

84.    On October 21, 2021, Plaintiff corresponded with Bedina Williams (the Data Manager who updates the website) about the website because it had not been updated. Ms.

Williams shared that she did not get permission to update it with Plaintiff's information on the leadership team.

85. On October 22, 2021, Berry, while on vacation sent an email regarding work expectations and for Plaintiff to report to work in person even if PDs are virtual. This was not communicated to Plaintiff prior to attending a virtual conference where Plaintiff was coded absent due to official school district business.

86. On October 23, 2021, Plaintiff was told by a colleague, Dexter Alexander, that Berry told him not to speak to Plaintiff.

87. On October 31, 2021, Plaintiff sent an email to Berry informing her that she had a family emergency and was requesting to work virtually from home on November 1, 2021. Plaintiff also sent a text, phone call and another email at 8:45 a.m. with no response until 9:11 a m. on November 1, 2021.  In that email Berry stated how could Plaintiff work from home if she had a family emergency. Plaintiff responded that she had to use a personal day off because Berry did not respond in a timely manner. Berry responded later that afternoon, that she did in fact respond in the email that was sent at 9:11a.m.

88. Plaintiff was subjected to retaliatory excessive monitoring by Defendants.

89. On November 8, 2021, Plaintiff's secretary told her that Berry requested Plaintiff's time and attendance document while Plaintiff was out the previous week.

90. On November 9, 2021, Plaintiff filed her EEOC Charge of race discrimination and hostile work environment, and unauthorized disclosure of her medical information by Defendant in violation of the ADA.

91. On November 9, 2021, another executive secretary, Stephanie Wilkins, informed Plaintiff that Berry also pulled Plaintiff's attendance.

92. On November 16, 2021, the Deputy of Teaching and Learning, Meredith Mehra, called Plaintiff after a meeting with Brooks and Berry stating that she (Ms. Mehra) "does not want to get involved in their messiness". Mehra said she could clearly see that they are trying to "drag her into this nonsense". Ms. Mehra stated that she knew something was going on when Brooks called her during Plaintiff's meeting with Brooks to ask Mehra a random question, followed up by an email from Berry. She also indicated that she asked Berry specifically who she wanted Mehra to share the information with regarding the meeting they had on Friday and follow up to the conversation. Mehra stated that Berry told her to only send the email with the information to Mr. Washington.

93. On December 1, 2021, Plaintiff's secretary texted Plaintiff to inform Plaintiff that Berry told her that the School District's Health Services did not receive Plaintiff's absence request SEH-3, and Plaintiff's FMLA has not been approved yet. Plaintiff responded, "that's not true I emailed it and mailed the card".

94. Plaintiff then called Health Services for an update on her FMLA request and SEH-3 form/card. Plaintiff spoke with Dorbens Nelson in Health Services who informed Plaintiff that a company picks up all their SEH-3 documents and scans them into their system. However, due to the holiday last Thursday he assumes that they were behind. He asked Plaintiff to email the document to him directly. Plaintiff also inquired about the status of her FMLA. He stated they have been behind because the previous person who processed the information resigned. He stated that Plaintiff's information was on the data base kept by the previous employee. Plaintiff shared with him she had been corresponding with Taylor Farrar but have not heard back from her in over two weeks. He stated that she is new, and she is getting used to things and it is taking her a long time

to process the information, but she will reach out as soon as Plaintiff's documents were processed.

95.     On December 6, 2021, Plaintiff talked to her secretary, Kolsky, who informed Plaintiff that on December 1st she was asked to report to Berry's office by Berry's confidential secretary. When she arrived, Berry told Kolsky she had just got off the phone with Health Services and they informed her that they did not have any of Plaintiff's documents. Kolsky shared with Berry that she knew that Shannon Smith had Plaintiff's documents because she was asked by Plaintiff to check on Plaintiff's status. Berry stated that there is no Shannon Smith who worked there (in that department).  Kolsky replied that she spoke to someone named Shannon who shared the documents that were received and that was all she knew. She then asked Berry what she would like for Kolsky to do? Why was she there? Kolsky stated that she felt as if she was being interrogated.

96.     On January 17, 2022, the School District filed its position statement in response to Plaintiff's EEOC charge with the EEOC.

97.     On January 22, 2022, Plaintiff's direct report, Michelle Nutini texted and emailed Plaintiff a job posting for the Executive Director of Professional Learning. Upon review Plaintiff discovered that 95% of the essential functions for that position were exactly the same as Plaintiff's current job.  Defendants initiated the retaliatory removal of Plaintiff from her position with the School District.

98.     On January 27, 2022, in a conversation with Moody in regard to ESY planning and teacher shortage she stated, "I guess we are all going to be out sick this summer because teachers are not going to show up." Plaintiff asked her what she said, and she repeated the comment, alluding to Plaintiff being out sick the last summer during ESY.

99.     On January 28, 2022, Berry told Plaintiff in a meeting, in the presence of the leadership

        team and the leadership coach, Kathy Wilson, in a very nasty and disrespectful manner,

        that Plaintiff needed to tell her direct report, Mr. Washington, to leave Plaintiff's office

        because they were having a virtual meeting. However, the meeting was virtual, and

        Plaintiff had a virtual background, and was participating in the meeting with headphones

        on. (NOTE: Washington had participated in all leadership meetings in Plaintiff's absence

        and has been privy to leadership information/discussions. He also meets with the

        leadership team on a regular basis at their end of the day meetings).

100.    On January 28, 2022, Plaintiff scheduled an emergency meeting with her leadership

        coach, Ms. Wilson to discuss Plaintiff's embarrassment and confusion about Berry's

        statement made during their meeting. Wilson agreed that Berry's tone was nasty,

        disrespectful, and unwarranted. Wilson stated that Plaintiff did nothing wrong and having

        someone in Plaintiff's office during the meeting did not warrant Berry's response. Wilson

        also stated that she was shocked to hear her talk to Plaintiff like Plaintiff was a child.

101.    On February 2, 2022, Plaintiff met with Berry and Brooks for Plaintiff's scheduled

        leadership plan meeting (1:2 meeting). In the meeting Brooks stated that they were

        planning to post and hire a position for the Executive Director of Professional Learning,

        but it will not interfere with Plaintiff's job responsibilities. Plaintiff will still be

        responsible for, and needed to focus on the instruction, content, and preparing slide decks

        for professional development/learning. The new hire will be a support to Plaintiff's work

        that will serve as a check and balance, communicate with other offices and develop a

        yearly PD plan. (NOTE: The responsibility of the new ED is what Plaintiff was

        responsible for at the time and have done for the previous two years. In addition, the

School District has an Office of Teaching and Learning, and they do not have an Executive Director of Professional Learning).

102.   On February 2, 2022, Berry scheduled a meeting for 10:00 a.m. and did not show up, nor send any communication until Plaintiff reached out to her in an email at 10:56am. She responded and her secretary called to ask Plaintiff to join the link at 11:00 a.m. However, Plaintiff could not attend the meeting due to a scheduling conflict. Plaintiff's direct report later shared that the meeting focused on evaluations for related service providers that needed to be completed by February 4, 2022. Plaintiff was never told that she was responsible, and Berry did not communicate with Plaintiff what Plaintiff missed in the meeting.

103.   On February 2, 2022, Plaintiff received a text from her direct report Montanez asking to speak with Plaintiff about somethings that were taking place that she does not believe that Plaintiff was aware of.  Plaintiff met with Montanez later that day and she stated that she has been part of meetings with the Office of Post School Readiness that Plaintiff previously participated in, but Plaintiff was taken off the meeting invitations.  She also stated that there was a scheduled meeting for Friday, February 4, 2022, with Brooks and others to discuss **indicator 14.**  Plaintiff was not aware of the meeting and did not know why the meeting was being held without Plaintiff's knowledge.

104.   On February 7, 2022, Berry sent an email indicating that the Instruction Conducted in the Home (ICH) document and a meeting to discuss upcoming tasks must be completed and the meeting must take place by the close of business on February 11, 2022.  Plaintiff responded that she mentioned in their leadership meeting that the document was completed for weeks and included the link. Berry then responded in an email that it is her

expectation and directive to have a document completed to share with the field despite Plaintiff sharing multiple times that it was done.

105. On February 8, 2022, in Plaintiff's meeting with her leadership coach, Plaintiff was told that her colleagues (Moody and Hertzog) were aware of and have witnessed Berry's mistreatment of Plaintiff and they have discussed the situation with her on several occasions. She also stated that they wanted to reach out when Plaintiff was out of work for weeks but was reluctant to do so because they were not sure if they could.

106. Following Plaintiff's protected activities of filing her formal internal complaint of discriminatory hostile work environment with the School District and filing her EEOC charge of race discrimination and racially motivated hostile work environment against Defendants, and while her charge was being investigated and pending before the EEOC, Defendants continued to subject Plaintiff to retaliatory actions, including retaliatory hostile work environment.

107. On February 25, 2022, Plaintiff was not invited to the Summer Planning meeting although Plaintiff was responsible for ESY.  However, Plaintiff's colleague, Moody was invited.  Plaintiff reached out to Berry at 9:33 a.m. and asked if she needed to attend the meeting and told Berry that she did not have the invite for the meeting.  Berry replied that she didn't know if plaintiff need to be at the meeting because "there are so many meetings." However, at 10:20 a.m. Plaintiff was sent a text message by Berry indicating that she sent Plaintiff the invite and she wasn't sure why Plaintiff was not invited initially. When Plaintiff logged into the meeting Moody was already present.

108. Plaintiff was subjected to continuous hostility, condescending and humiliating comments, interfering with Plaintiff's ability to supervise her direct reports, precluded from

important meetings, excluded from departmental information and being set up for failure by Defendants.

109.   On April 7, 2022, Berry had a meeting with two of Plaintiff's Coordinators Renay Boyce and Joyce Dukes, to discuss a change in their responsibilities and moving them to another team. Plaintiff was not aware that the meeting was being held.

110.   Between April 11 and 25, 2022, Berry was having meetings with Plaintiff's direct reports and making changes in Plaintiff's teams, but was not informing Plaintiff about these changes, which confused Plaintiff's direct reports because they did not hear about these changes from Plaintiff.

111.   On April 29, 2022, Berry's secretary, Teniquka Smith, sent an email to Plaintiff advising Plaintiff that the vacation request Plaintiff made back on February 18, 2022, was denied by Berry. Plaintiff was also told that even though she had been out for Covid-19, Plaintiff would not be coded for COVID sick leave because Defendants would not honor days prior to the positive test although Plaintiff had symptoms.  Yet, the email from the School District Employee Health Services stated that Plaintiff could be coded for COVID sick leave at the onset of symptoms.

112.   On May 27, 2022, Plaintiff's colleague, Moody, told Plaintiff that she was given the draft organization chart to create a flowchart, weeks prior, however this was never discussed or shared with Plaintiff by Defendants. Moody also informed Plaintiff that several people have been moved off Plaintiff's team without any reasonable explanation. These actions were being taken by Defendants without informing or involving Plaintiff in these decisions.

113.   On June 1, 2022, all the directors in the office were issued a work phone except Plaintiff.

114.    On June 6, 2022, Moody informed Plaintiff that Berry called her after a mandatory meeting that Plaintiff was not invited to and told Moody not to invite Plaintiff to a meeting again that she (Berry) did not invite Plaintiff to.

115.    On June 7, 2022, Berry gave Plaintiff a retaliatory written warning for allegedly not meeting deadlines on a task that involved several people to complete, including Moody, but Plaintiff was the only person issued the write-up. Yet, Moody also missed a deadline for a similar task to be completed. She was also responsible for writing the agreements for COVID Compensatory Services (CCS) and did not meet the deadline, but she was not written up.

116.    On June 8, 2022, Plaintiff responded to Berry's write-up, informing her that she had completed the task and asked Moody to send the documents to Berry. Later that evening Moody shared in a text message that Berry called her and texted her several times to try to determine if Plaintiff really had a conversation with Moody about completing the project/task and questioning if she thought Plaintiff did her part. The following week Plaintiff learned in a meeting with her leadership coach that Hertzog was also called several times and questioned about the completion of the task and the language in a document that was part of the task.

117.    On July 22, 2022, Berry asked Plaintiff to go to an old school to inventory material and come up with a plan of removal for SPED instructional materials. Berry was aware of the horrible condition of the school and the classroom with the materials in it. Another colleague informed everyone on the email chain about the conditions of the room. However, Plaintiff was still instructed by Berry to go into this space to inventory materials.

118.    On July 25, 2022, Plaintiff reported to the school (Austin Meehan). The condition of the school and the room was deplorable, it was hot with no air condition or functioning windows, dirt and thick dust was on everything in the room, mouse droppings, roaches, and old rotted food was in the space. Plaintiff got very sick after being in the room.

119.    On July 26, 2022, a meeting was held with Plaintiff's transition Coordinators without Plaintiff's knowledge to discuss a transition project with Amazon. No details were shared with Plaintiff.

120.    Defendants subjected Plaintiff to persistent and pervasive harassment and hostile work environment.

121.    Defendants Berry and Brooks' conducts toward Plaintiff was outrageous, and done with reckless disregard for her rights, and with the intention to inflict emotional injury on Plaintiff.

122.    The racially hostile work environment and retaliatory actions against Plaintiff for engaging in protected activities is continuing.

## V.    STATEMENT OF CLAIM

### COUNT ONE – Title VII VIOLATIONS –Race Discrimination/Hostile Work Environment
### Plaintiff v. School District

123.    Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 122 as if the same were fully set forth at length herein.

124.    The acts and conducts of Defendant School District through its respective agents, officers, employees, and officials as stated above where Plaintiff was subjected differential treatment because of her race and harassment and hostile work environment because of her race, are violations of Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq.

125.  As a direct result of the said discriminatory practices of the Defendant in violation of
Title VII, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of
future earning power, loss of back pay, front pay, interest due therein as well as mental
anguish, emotional distress, humiliation and damage to reputation.

## COUNT TWO – TITLE VII VIOLATIONS-RETALIATION
### Plaintiff v. School District Only

126.  Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 125
as if same were fully set forth at length herein.

127.  The acts and conducts of the Defendant School District, through its agents, officers, and
employees as stated above where Plaintiff was subjected to adverse employment actions
and retaliatory harassment and hostile work environment because she engaged in
protected activities under the statute are violations of Title VII.

128.  As a direct result of said retaliatory practices of the Defendant, Plaintiff has sustained
loss of wages and earnings, loss of benefits, loss of future earning power, loss of back
pay, front pay, interest due therein as well as mental anguish, emotional distress,
humiliation, and damages to reputation.

## COUNT THREE – PHRA VIOLATION – RACE DISCRIMINATION
### Plaintiff v. All Defendants

129.  Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 128 as
if same were fully set forth at length herein.

130.  The acts and conducts of Defendant School District through its agents, officers,
employees, and officials as stated above where Plaintiff was subjected to discriminatory
treatment, harassment and hostile work environment because of her race were violations
of the Pennsylvania Human Relations Act, Title 43 Pa. Cons. Stat. Ann. §951 et seq.

131.   Defendants Sonya Berry and Dr. Brooks aided and abetted the racial discrimination and

hostile work environment of the Plaintiff and the violation of her rights under this statute.

132.   As a result of the said discriminatory practices of the Defendants in violation of the

PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future

earning power, loss of back pay, front pay, mental anguish, emotional distress,

humiliation, and damages to reputation.

## COUNT FOUR – PHRA VIOLATION – RETALIATION
### Plaintiff v. All Defendants

133.   Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 132 as

if same were fully set forth at length herein.

134.   The acts and conducts of Defendant School District through its agents, officers,

employees, and officials as stated above where Plaintiff was subjected to retaliatory

adverse actions and hostile work environment because she engaged in protected activities

are violations of the Pennsylvania Human Relations Act, Title 43 Pa. Cons. Stat. Ann.

§951 et seq.

135.   Defendants Sonya Berry and Dr. Brooks aided and abetted the retaliatory actions taken

against Plaintiff and the violation of her rights under this statute.

136.   As a result of the said retaliatory practices of the Defendants in violation of the PHRA,

Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning

power, loss of back pay, front pay, mental anguish, emotional distress, humiliation, and

damages to reputation.

## COUNT FIVE – ADA VIOLATION
### Plaintiff v. School District and Sonya Berry

137.   Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 136 as

if same were fully set forth at length herein.

138.   The acts and conducts of Defendants School District and Sonya Berry as stated above where Plaintiff's medical information was being disclosed to individuals by these Defendants without Plaintiff's express authorization and consent were violations of the Americans with Disability Act.

139.   As a result of the said violations of Plaintiff's rights under the ADA by Defendants, Plaintiff has sustained mental anguish, emotional distress, and humiliation.

**COUNT SIX –Section 1981 VIOLATIONS-Race Discrimination**
**Plaintiff v. Defendants Berry and Brooks Only**

140.   Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 139 as if same were fully set forth at length herein.

141.   The acts and conducts of the Defendants Berry and Brooks as stated above where Plaintiff was subjected to discriminatory treatment, harassment and hostile work environment because of her race were violations of the Civil Rights Act 42 USC §1981.

142.   Plaintiff is asserting her Section 1981 claims against these individual defendants via Section 1983 of the Civil Rights Act, as these Defendants were acting under color of state law when they engaged in this violation of Plaintiff's civil rights and her Constitutional rights of Equal Protection under the Fourteenth Amendment.

143.   As a direct result of said discriminatory practices of the Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

### COUNT SEVEN –Section 1981 VIOLATIONS-Retaliation
### Plaintiff v. Defendants Berry and Brooks Only

144.   Plaintiff incorporates by reference all allegations alleged in paragraphs one 1 through 143 as if same were fully set forth at length herein.

145.   The acts and conducts of the Defendants Berry and Brooks as stated above where Plaintiff was subjected to retaliatory actions and retaliatory harassment and hostile work environment because she engaged in protected activities were violations of the Civil Rights Act 42 USC §1981.

146.   Plaintiff is asserting her Section 1981 claims against these individual defendants via Section 1983 of the Civil Rights Act, as these Defendants were acting under color of state law when they engaged in this violation of Plaintiff's civil rights.

147.   As a direct result of said retaliatory actions of the Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

### COUNT EIGHT – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. Sonya Berry and Dr. Brooks Only

148.   Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 147 as if same were fully set forth at length herein.

149.   The acts and conducts of Defendants Sonya Berry and Dr. Brooks as stated above were outrageous and with the intent to cause Plaintiff severe emotional distress.

150.   Defendants conduct was intentional or reckless disregard of the harm to Plaintiff, which was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized

society.

151.   As a direct and proximate result of the conducts of these Defendants, Plaintiff has

sustained severe mental anguish, emotional distress, and humiliation.

## VI.        **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands judgment against Defendants, and request that

this Honorable Court:

A.      Enter judgment against the Defendants for back pay, front pay, loss income, loss

benefits, pre and post judgment interests, costs of suit, punitive damages against the individual

Defendants Sonya Berry and Dr. Brooks, compensatory damages, attorneys' fees and expert

witness fees as permitted by law; and

B.      Award such other relief as the Court may deem necessary and just, including but

not limited to an order to make whole.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact raised by this complaint.

ABIONA LAW PLLC

Olugbenga O. Abiona, Esquire
Attorney ID # 57026
121 South Broad Street, Suite 1200
Philadelphia, PA 19107
(215) 833-8227
Attorney for Plaintiff

Dated:  November 16, 2022



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/30/2022

**To:** Dr. Charlotte Brickhouse
8817 Manchester Avenue
Philadelphia, PA 19152
Charge No: 530-2022-00925

EEOC     Representative     and     Legal Unit
telephone number:

267-589-9707

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
09/30/2022

Karen McDonough
Deputy District Director